IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 09-204 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CHAY RONDEL PITTS, | ) | |
| | ) | |
| Defendant | ) | |

MEMORANDUM ORDER

CONTI, District Judge

On June 25, 2010, defendant Chay Rondel Pitts ("defendant" or "Pitts") filed, pro se, a motion for a bond hearing. (Docket No. 36.) On July 20, 2010, the court held a hearing and dismissed defendant's motion without prejudice in order to allow his counsel to file the motion. Nonetheless, at the hearing the court heard testimony from witnesses who appeared on that date. On July 23, 2010 defendant's counsel filed a motion for release on bond (the "Motion"). (Docket No. 40.) On July 30, 2010, the government filed a response to the Motion. (Docket No. 43.) On August 4, 2010, the court held a hearing on the Motion at which further testimony and other evidence were presented. After a review of the submissions, arguments of counsel, evidence, and a pretrial services recommendation, this court denied defendant's request for bail on the record and ordered defendant detained without bond pending trial. This memorandum order sets forth the reasons for the court's decision, which were also detailed on the record.

**Factual and Procedural Background**

On June 23, 2009 defendant was indicted by a federal grand jury of possession of firearms by a convicted felon on or about August 9, 2008, in violation of 18 U.S.C. § 922(g)(1). The indictment reflects that defendant was previously convicted on September 25, 2005, of the crime of criminal homicide[1] in a state court (See Docket No. CC2004002989, in the Court of Common Pleas of Allegheny County, Criminal Division, Pennsylvania). While incarcerated, defendant pled guilty on April 18, 2006 to the unlawful possession of a weapon or implement for escape by an inmate. (Gov't Resp. ¶ 5.) (Docket No. 43.) On September 10, 2007, defendant was released on parole to a halfway house. The instant offense is alleged to have occurred while defendant was on escape status from the halfway house.

July 21, 2010 Hearing

Defendant filed several exhibits with his motion, including a letter from the Pennsylvania Board of Probation and Parole, a certificate of completion for a pro-voc course, his resume, and five letters of application for employment. The court denied defendant's motion filed pro se without prejudice to allow defendant's counsel to file the motion. Several family members attended the hearing in support of defendant, including his fiancé, mother, sister, daughter, uncle and cousin. Defendant presented his fiancé, Ebony Caldwell, as a witness, who testified that she would ensure defendant's compliance with respect to any term or condition of bond the court would impose upon defendant. She testified that she would be willing to call pretrial services with a report any time defendant did not come home on time as required by his monitoring conditions.

---

[1] The pretrial services report reflects that defendant pled guilty to involuntary manslaughter on October 7, 2005. The relevant docket indicates that defendant pled guilty to criminal homicide on September 26, 2005 and was

The government called defendant's parole agent for the Commonwealth of Pennsylvania, Cynthia Lacey ("Lacey"). Lacey testified that she supervised defendant for the state charge of involuntary manslaughter for which defendant was released from SCI-Somerset to a halfway house on September 10, 2007. Lacey testified that defendant absconded from the halfway house on October 26, 2007. Defendant in August 2008 was arrested by the Pittsburgh police for the instant federal charge. For absconding from the halfway house defendant received a parole violation that resulted in a sentence of nine months back-time. Lacey testified that defendant's new maximum date for release from state detention is September 27, 2010, which is subject to change pending the outcome of the federal case. Lacey was not able to state for certain the date of defendant's release without consulting with her supervisor.

The government called Special Agent Albert J. Maloney ("Maloney"), as a witness. Maloney testified that he was familiar with defendant as a result of the federal adoption of defendant's state court case. Maloney testified that, although he was not personally involved with defendant's arrest in August 2008, he discussed the matter with the Pittsburgh police officers who were involved. Upon review of the police reports, Maloney testified that the police came upon defendant while on patrol of an area they searched after hearing shots fired. The officers noticed defendant approaching a vehicle and tossing something to the ground, which turned out to be a plastic baggie with crack cocaine in it. According to the report, defendant used the name "Brandon Blackman." They placed defendant on arrest, and discovered car keys in his pocket. Defendant gave them verbal consent to look in the vehicle, although the vehicle was not owned by defendant. One of the officers noticed in plain view another plastic corner baggie in

---

sentenced on October 7, 2005. (See Docket No. CC2004002989, C.P., Allegheny County, Pa. Crim. Div.)

the vehicle. When a firearm was discovered in the center console, defendant revoked his consent to search the vehicle any further and the search was stopped. At that point the owner of the vehicle came upon the scene and allowed the search to continue. No additional evidence was recovered.

Maloney testified that as a former police officer he investigated narcotics offenses and that gun violations sometimes go hand-in-hand with drug offenses. He testified that a plastic baggie with a corner ripped off found in a vehicle is significant evidence with respect to trafficking narcotics. Maloney also testified that witnessing a defendant discard a baggie corner that had suspected crack cocaine in it is evidence of drug trafficking, as opposed to individual drug use.

<u>August 4, 2010 Hearing</u>

As an initial matter, defendant presented a letter of a job offer from a retail clothing store. The government objected to the authenticity of letter. Defendant called pretrial services officer, Wendy Brown ("Brown"), as a witness. Brown testified that she based her negative recommendation for release upon defendant's criminal history, among other things. Brown pointed to the involuntary manslaughter conviction, charges of endangering the welfare of children – which was nol prossed, – the conviction for introduction of a weapon that may be used for escape by an inmate, a charge of intimidation of a witness, and the instant federal charge which occurred while defendant was on parole supervision. Defendant was on bond release for the involuntary manslaughter charge when he was charged with criminal activity on September 5,

4

2004 and on October 27, 2004. On October 31, 2005 and October 11, 2006, he respectively pled guilty to those offenses.[2]

Brown testified that defendant's fiancé would be appropriate for defendant's possible third-party custodian. Defendant testified that, if released, he was planning to keep steady work and to spend some time to get back on track with his family until his trial date. He indicated that he wanted to attend barber school and obtain a CDL driver's license. Defendant testified that he completed a safety course, was awaiting his GED scores, and was interested in becoming certified in HVAC (heating ventilation and air-conditioning). Defendant testified with respect to the recent part-time employment offer at a retail clothing store, he informed the employer that it was possible that he would be returning to prison in a short period of time.

**Standard**

The structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. See United States v. Lemos, 876 F. Supp. 58, 59 (D. N.J. 1995). The court is charged with determining whether there exists any "condition or combination of conditions [set forth in 18 U.S.C. § 3142(c) that] will reasonably assure the appearance of the [defendant] and/or the safety of the community...." 18 U.S.C. § 3142(f); see Lemos, 876 F. Supp. at 59 ("A condition precedent to detention without bail under subsection (e) is that a hearing be held as provided in

---

[2] The docket at CC2004002989, in the Court of Common Pleas, Allegheny County, Pennsylvania, Criminal Division reflects that defendant pled guilty to the offense of involuntary manslaughter on September 26, 2005 and was sentenced on October 7, 2005. This is a difference without a distinction for purposes of determining whether or not defendant was on bond when he committed the offenses on September 5, 2004 and October 27, 2004.

5

subsection (f)."). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

Section 3142(e) of the Bail Reform Act provides, in pertinent part:

> If, after a hearing pursuant to the provisions of subsection (f) . . ., the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial. . . .

18 U.S.C. § 3142(e).

## Discussion

Defendant seeks release on bond once he is released from state detention until his trial in federal court in order to seek employment and earn some income prior to any additional period of incarceration should he be convicted of the federal offense.

    A.    <u>General Framework</u>

Under the Bail Reform Act, 18 U.S.C. § 3141, the court must ensure that the interest of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court must determine whether there are any conditions or combination of conditions in 18 U.S.C. § 3141(c) that will reasonably assure the appearance of the defendant as required and the safety of any other person in the community. 18 U.S.C. § 3141(f).

The four factors that the court considers in whether to detain or release a defendant on bond pretrial are set forth in 18 U.S.C. § 3142(g)): (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person including, inter alia, character, employment, family ties, community ties, length of residence in the community and criminal history, whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, for an offense under federal, state, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

B.   Flight Risk

The burden is on the government to establish a risk of flight by a preponderance of the evidence. United States v. Himler, 797 F.2d 156 (3d Cir. 1986). To detain defendant on a risk of flight, the court would have to conclude that defendant has a risk of nonappearance and that there is no condition or combination of conditions that will assure his appearance at trial. The purpose is not to detain habitual criminals for deceitful purpose, but to secure the appearance of the accused at trial. In Himler, the court considered whether the defendant had a prior record of appearing in court as required when released prior to trial. Id. at 162. The court considered whether the defendant had family ties to the area, was employed, was capable of obtaining false identification, had a passport, and had contact with persons living abroad. Id. Although the defendant in that case was unemployed and capable of obtaining false evidence, the court found no direct evidence to suggest that he would flee from the prosecution. Id. (comparing United States v. Maull, 773 F.2d 1479 (8th Cir. 1985) (en banc) (detaining defendant who had previously fled from prosecution, had a secret passport and contact with persons living abroad who could

aid his flight); United States v. Vortis, 785 F.2d 327 (D.C. Cir. 1986) (detaining defendant who was traveling to Liberia at the time of his arrest, was the suspected leader of a fraudulent identification and airline ticket ring and had a safety deposit box with thirteen passports and other forms of identification)). Mere opportunity for flight is an insufficient ground for pretrial detention. Id. (citing Virgin Islands v. Leycock, 678 F.2d 467, 469 (3d Cir. 1982).

With respect to the risk of flight, the evidence shows that defendant has ties to the community, is a life-long resident and has a fiancé and children in western Pennsylvania. Although defendant has a criminal record, the record reflects that he showed up for past court hearings. There was no evidence presented showing that defendant had a passport or ties to someone living abroad. Under those circumstances, the court finds that the government did not meet its burden with respect to the risk of flight.

    C.    Safety of the Community

With respect to safety of the community, the burden is on the government to show by clear and convincing evidence that the defendant is a danger to the community and that there is no condition or combination of conditions which would reasonably ensure the safety of the community if defendant were to be released. Himler, 797 F.2d at 160-61, 161 n.1 (citing 18 U.S.C. § 3142(f).

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving the drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. See United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986) (danger to community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); see also United States v. Strong, 775

8

F.2d 504, 507 (3d Cir. 1985) (statutory language unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community). Several district courts have found that the combination of guns and drugs constitutes a danger to the community. See United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008) ("Danger to the community can come in many forms. Those of mixing gun possession with drug dealing, or recidivism indicating a propensity to commit further offenses are two such forms . . .."); see also United States v. Miller, No. CR10-4058, 2010 WL 3035753, at * 4 (N.D. Iowa Aug. 3, 2010) ("the combination of drugs and guns constitutes a danger to the community"); United States v. McArthur, No. CR09-0003, 2009 WL 1097194, at *3 (N.D. Iowa, Apr. 22, 2009) (noting that the combination of drugs and guns constitutes a danger to the community); United States v. Francis, No. IP01-0060, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001) ("[E]vidence of continuing criminal conduct in this case, which blends drugs and guns, demonstrate [sic] by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community . . ..").

With respect to danger to the community, when determining whether to detain defendant the court must, in essence, make a prediction about what is likely to happen if defendant is released based upon the factors set forth in the Bail Reform Act. See Perry, 788 F.2d at 114 ("the dangerousness determination involves a prediction of the detainee's likely future behavior."). Applying § 3142(g)'s factors to the instant case, the court first considers the nature and seriousness of the offense charged. The officer's testimony about the report of the incident giving rise to defendant's arrest reflects that defendant was alleged to be in possession of crack cocaine along with the firearm in the console of car. Although defendant is only charged with

9

possession of a firearm by a convicted felon in the instant case, the evidence demonstrates a combination of drugs and guns which is very dangerous.  See Levy, 2008 WL 4978298, at *2; see also  Miller, 2010 WL 3035753, at * 4; McArthur, 2009 WL 1097194, at *3;  Francis, 2001 WL 899635, at *5.  Therefore, the first factor weighs against defendant.

Second, with respect to the weight of the evidence against defendant, the arresting officers indicated that they saw defendant tossing a plastic baggie which contained cocaine, and that he had the keys to the car where the gun was located and accessible to him.  Under those circumstances, the weight of the evidence is against the defendant in this case.

The third factor is the history and characteristics of defendant.  The court heard evidence that defendant has an opportunity to live with his fiancé and has family ties to the area.  These matters weigh in favor of defendant.  Although defendant has a sporadic employment history and lacks a GED, defendant is working on his GED and toward certifications for employment skills and training that may enable him to obtain a job with meaningful prospects for compensation, enabling him to support his family.  These matters weigh somewhat in defendant's favor.   With respect to defendant's criminal history, the court considers that at the time of the instant offense defendant was on escape due to walking away from a halfway house while on parole from a prior felony conviction for voluntary manslaughter.  Defendant was on bond at the time two other offenses to which he pled guilty were committed.  Those offenses were criminal trespass, receiving stolen property, criminal mischief, unauthorized use of a motor vehicle, and another incident of receiving stolen property and possessing marijuana.  Defendant pled guilty to an inmate in possession of a weapon in a prison environment, which could have very serious consequences to safety within the prison environment.  Given defendant's age, all these offenses

occurred in a relatively short period of time. Considering all aspects of defendant's background and criminal history, this third factor weighs in favor of the government.

Finally, the court must predict what would likely happen in the future to determine the nature and seriousness of the danger to the community. The court can only look to the record before the court which reflects that in the past when defendant was released he continued to engage in criminal activity and violated conditions of his release. Defendant was found with crack cocaine and a gun which implicates danger to the community due to the combination of a gun and drugs. This matter weighs heavily against him. The court predicts that defendant would likely engage in similar conduct in the future.

After considering all the § 3142(g) factors, the court concludes that the government met the burden of proof by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were released pending trial.

THEREFORE, this 19th day of August, 2010, IT IS HEREBY ORDERED that defendant shall be detained pending trial upon release from his state detention, and committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, to persons awaiting or serving sentences or being held in custody pending appeal.

IT IS FURTHER ORDERED that defendant shall be afforded reasonable opportunity for private consultation with his attorney.

IT IS FINALLY ORDERED that, upon order of the court or upon request of an attorney for the government, a person in charge of the correctional facility in which defendant is confined

shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                                              /s/  JOY FLOWERS CONTI
                                                                  Joy Flowers Conti
                                                                  United States District Judge